**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| DAVID McBROOM, | ) |
| Plaintiff, | ) **No. 03:12-cv-00589-HU** |
| vs. | ) |
| CITY OF GRESHAM, and | ) **FINDINGS & RECOMMENDATION** |
| AARON TURNAGE, Personally, | ) **ON MOTION FOR PARTIAL** |
| Defendants. | ) **SUMMARY JUDGMENT** |

Leonard Randolph Berman
Law Office of Leonard R. Berman
4711 S.W. Huber Street, Suite E-3
Portland, OR 97219

    Attorney for Plaintiff

David C. Lewis
Robert S. Wagner
Miller & Wagner, LLP
2210 N.W. Flanders Street
Portland, OR 97210-3408

    Attorneys for Defendants

1 - FINDINGS & RECOMMENDATION

HUBEL, Magistrate Judge:

The plaintiff David McBroom brings a civil rights action under 42 U.S.C. § 1983, and a state-law claim for negligence, based on the alleged violation of his rights under the fourth amendment to the U.S. Constitution. McBroom alleges the defendant Aaron Turnage, who is a Gresham, Oregon, police officer, "interrogated[,] detained and arrested [him] without reasonable suspicion and probable cause." Dkt. #1, ¶ 9. He alleges the defendant City of Gresham (the "City") was negligent in "[f]ailing to hire, train and supervise employees regarding reasonable suspicion, probable cause and the 4th Amendment, interrogating and dealing with the public lawfully[.]" *Id.*, ¶ 22.

McBroom has filed a motion for "partial summary judgment as to liability on all his claims." Dkt. #17. The defendants argue summary judgment is precluded by the existence of numerous issues of material fact. In addition, the defendants initially argued McBroom had failed to establish the facts sufficiently to overcome Turnage's qualified immunity defense on summary judgment. Dkt. #21. However, following oral argument on August 13, 2013, the defendants "now concede dismissal of their qualified immunity defense because of clear questions of fact which permeate the entire encounter between McBroom and Turnage and necessitate a jury trial." Dkt. #27. As such, summary judgment should be granted in McBroom's favor on the qualified immunity defense.

The motion is fully briefed, and the undersigned submits the following findings and recommended disposition of the case pursuant to 28 U.S.C. § 636(b)(1)(B).

2 - FINDINGS & RECOMMENDATION

***SUMMARY JUDGMENT STANDARDS***

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In considering a motion for summary judgment, the court "must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial." *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002) (citing *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 410 (9th Cir. 1996)).

The Ninth Circuit Court of Appeals has described "the shifting burden of proof governing motions for summary judgment" as follows:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S. Ct. 2548. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. *Id.* at 324, 106 S. Ct. 2548. This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 528 (1986). In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505. In determining whether a jury could reasonably render a verdict in the non-moving party's favor, all justifiable inferences are to be

3 - FINDINGS & RECOMMENDATION

1
2
>           drawn in its favor.  *Id.* at 255, 106 S. Ct. 2505.

3  *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th
4  Cir. 2010).

5
6                    ***SECTION 1983 STANDARDS GENERALLY***

7       Section 1983 provides, in relevant part, that "[e]very person
8  who, under color of any statute, ordinance, regulation, custom, or
9  usage, of any State . . . subjects, or causes to be subjected, any
10 citizen of the United States or other person within the jurisdic-
11 tion thereof to the deprivation of any rights, privileges, or
12 immunities secured by the Constitution and laws, shall be liable to
13 the party injured in an action at law, suit in equity, or other
14 proper proceeding for redress."  42 U.S.C. § 1983.

15      To prevail in a claim under 42 U.S.C. § 1983, the plaintiff
16 must show that "a person acting under color of state law" deprived
17 the plaintiff "of rights, privileges, or immunities secured by the
18 Constitution or laws of the United States."  *Parratt v. Taylor*, 451
19 U.S. 527, 535, 101 s. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981),
20 *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106
21 S. Ct. 662, 88 L. Ed. 2d 662 (1986).  Section 1983 "is not itself
22 a source of substantive rights, but merely provides a method for
23 vindicating federal rights elsewhere conferred.  The first step in
24 any such claim is to identify the specific constitutional right
25 allegedly infringed."  *Albright v. Oliver*, 510 U.S. 266, 271, 114
26 S. Ct. 807, 811-812, 127 L. Ed. 2d 114 (1994) (internal citations
27 and quotation marks omitted).
28

4  - FINDINGS & RECOMMENDATION

***STANDARDS FOR FOURTH AMENDMENT VIOLATIONS***

"To move forward on 42 U.S.C. § 1983 and state law false arrest claims, a plaintiff must establish that his arrest was not supported by probable cause." *Biolchini v. City of Bend*, 2010 WL 5891613 at *4 (D. Or. Dec. 28, 2010) (Coffin, MJ) (citing *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998); *Bacon v. City of Tigard*, 81 Or. App. 147, 147 (1986) "(clarifying that probable cause is a complete defense to a false arrest claim)"). Chief Judge Aiken of this court recently discussed the standards for determining whether probable cause to arrest exists:

> Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a prudent person to believe that a suspect has committed, is committing, or is about to commit a crime. *United States v. Hoyos*, 892 F.2d 1387, 1392 (9th Cir. 1989). The question is whether the arresting officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. *Graham v. Connor*, 490 U.S. 386, 397[, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443] (1989).

*Wilson v. Lane County Sheriff's Office*, slip op., 2012 WL 6738279 at *3 (D. Or. Dec. 21, 2012).

An encounter need not lead to arrest to implicate the fourth amendment. "'The Fourth Amendment prohibits "unreasonable searches and seizures" by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest.'" *Gallegos v. City of Los Angeles*, 308 F.3d 987, 990 (9th Cir. 2002) (quoting *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. C. 744, 750, 151 L. Ed. 2d 740 (2002), in turn citing *Terry v. Ohio*, 392 U.S. 1, 9, 88 S. Ct. 1868, 1873, 20 L. Ed. 2d 889 (1968)). In order to justify a "brief, investigatory

5 - FINDINGS & RECOMMENDATION

search or seizure," officers must have "a reasonable, articulable suspicion that justifies their actions. The reasonable suspicion standard 'is a less demanding standard than probable cause,' and merely requires 'a minimal level of objective justification.'" *Id.* (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 675-76, 145 L. Ed. 2d 570 (2000); citing *Arvizu*, 534, U.S. at 273, 122 S. Ct. at 750).

### *NEGLIGENCE STANDARDS*

McBroom claims the City was negligent in "[f]ailing to hire, train and supervise employees regarding reasonable suspicion, probable cause and the 4th Amendment, interrogating and dealing with the public lawfully[.]" Dkt. #1, ¶ 22. To prevail on this claim, McBroom must show the City's hiring, training, or supervision of its officers was "sufficiently inadequate as to constitute 'deliberate indifference' to the rights of persons with whom the [officers] come into contact." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989) (citing *City of Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).

### *DISCUSSION*

Little discussion is required in order to rule on McBroom's motion. The facts as pled by the parties, viewed in the light most favorable to the defendants, demonstrate the presence of numerous issues of genuine, material fact that preclude summary judgment on any issue.

In 42 numbered paragraphs, McBroom alleges the following facts. (The following factual summary, including all quoted por-

6 - FINDINGS & RECOMMENDATION

tions, is taken from McBroom's numbered paragraphs 1-42, at pages 3-6 of his brief, Dkt. #18.)  On the morning of January 31, 2011, at approximately 1:30 a.m., McBroom was shopping in a 7-11 store in Gresham, Oregon, when he was approached by Turnage "out of the blue."  McBroom claims he was looking at magazines when Turnage entered the store, and he never threatened Turnage, displayed any weapon, made any threatening gestures, committed any criminal offense, or otherwise did anything at all that would have caused Turnage to suspect him of criminal activity. According to McBroom, Turnage told him the officers were investigating a report that a man was "slumped behind the wheel of a Chevy Camaro," bearing dealer plates, that was "parked crooked and . . . running." McBroom was the only customer in the store at the time.

    While Turnage was talking with McBroom, McBroom walked away from him, putting his hands in his pockets.  McBroom returned to shopping, and at some point picked up a bottle of milk, which Turnage asked him to put down.  McBroom alleges Turnage searched him without "valid informed consent," and without reasonable suspicion to justify a search of McBroom's person.  Turnage did not conduct a field sobriety test, and did not see any bulge in McBroom's clothing suggesting a weapon.  During the pat-down search, Turnage discovered what McBroom describes as "his own prescription drugs loose in his possession without the prescription."  McBroom claims he was arrested on the basis of his "possession of prescription narcotic drugs without a prescription," and all criminal charges against him later were dropped.

    Turnage's factual recitation differs from McBroom's version of the facts in significant respects.  (The following factual summary,

7 - FINDINGS & RECOMMENDATION

including all quoted portions, is taken from pages 3-6 of the defendants' brief, Dkt. #21.)  On January 29, 2011, at about 1:40 a.m., Turnage and another officer were dispatched to the 7-11 store to investigate "a suspected drunk driver."  A "911" caller had "reported a male in a Chevy Camaro with dealer plates was parked crooked, was drunk, was slumped over the wheel with the vehicle running and the lights on[.]"  When the officers arrived, the Camaro was the only car in the store's parking lot; however, the vehicle was not occupied.  They observed a "lone male customer inside the store."  According to Turnage, when he entered the store, a store employee identified the male customer as the man who had been slumped over the wheel of the Camaro.

 Turnage, who was in uniform and displaying his badge, approached the man, who identified himself as McBroom.  McBroom stated he was the driver of the Camaro, and Turnage explained what he was investigating.  Turnage claims "McBroom showed multiple signs of being intoxicated," an allegation he claims is corroborated by the "911" caller, "who believed McBroom to be very intoxicated and unable to safely operate a motor vehicle based upon her observations of his driving."

 Turnage states McBroom was wearing a shirt, pants, and jacket, and when Turnage initially encountered him, McBroom had his hands in his pockets.  Turnage asked McBroom to remove his hands from his pockets "for their safety," but during their conversation, McBroom returned his hands to his pockets, and Turnage again asked him to remove them. According to Turnage, McBroom "became uncooperative," suddenly walking away from him "and around the end of a store aisle while putting his hands back into his pockets." Turnage was no

8 - FINDINGS & RECOMMENDATION

longer able to see what McBroom was doing. He followed McBroom, who continued to walk away from him, "now with a gallon of milk in his hand." Turnage claims he "ordered McBroom to put the milk down and told him that he was going to pat him down for weapons." Turnage patted down McBroom, finding no weapons.

Turnage alleges he then asked McBroom if he could search his pockets, and McBroom consented. Turnage "located a small, unmarked, closed pill container" in McBroom's pocket. He claims McBroom gave him permission to open the bottle, in which Turnage found Vicodin and Lorazepam. According to Turnage, McBroom "admitted that he did not possess any proof that the drugs belonged to him or were prescribed to him by a doctor." Turnage placed McBroom under arrest, charging him "with two counts of Unlawful Possession of Controlled Substances for the crime committed in the officers' presence."

Turnage maintains that the facts and circumstances of his encounter with McBroom, including the report by the "911" caller, provided reasonable suspicion for him to justify the pat-down search. He claims McBroom consented to the search of his pockets.

Considering what McBroom must prove to prevail on each of his claims, under the standards set forth above, the parties' factual recitations reveal the following questions of fact that preclude summary judgment:

(1) In light of the facts and circumstances confronting him, did Turnage have reasonable suspicion that McBroom had committed, was committing, or was about to commit a crime, justifying his brief detention and questioning of McBroom?

9 - FINDINGS & RECOMMENDATION

(2) Considering the totality of the circumstances, did McBroom's behavior give rise to a reasonable suspicion that he might be in possession of a weapon, justifying Turnage's pat-down search of McBroom?

(3) Did McBroom voluntarily consent to a search of his pockets?

(4) Did Turnage have probable cause to arrest McBroom?

McBroom argues Turnage's initial pat-down search was unwarranted because he did not display any behavior or appearance that could have led Turnage to suspect he was armed and dangerous. McBroom points to the court's ruling in *Bonneau v. Murphy*, slip op., 2013 WL 1386617 (D. Or. Apr. 4, 2013) (Hernandez, J), in support of his claim that no reasonable officer could have reasonably believed he was armed and dangerous. The facts in this case differ from those in *Bonneau* in material respects. There, the officer stopped Bonneau's vehicle due to a malfunctioning brake light and a license plate that was difficult to read. The officer found Bonneau's responses to his questions "evasive," and his behavior and demeanor "highly unusual." The officer did not see any suspicious bulge in Bonneau's clothing, and did not see Bonneau reaching for anything in his pockets. The court held the facts of the officer's encounter with Bonneau could not cause a reasonable officer to suspect Bonneau might be armed and dangerous, and therefore, Bonneau was granted summary judgment on the issue of whether the pat-down search violated his fourth amendment rights. *Id.* *Bonneau* is distinguishable on its facts.

Here, the officers first encountered McBroom in response to a "911" call indicating a man was slumped over in a car, and appeared

10 - FINDINGS & RECOMMENDATION

to be drunk. The officers were dispatched to investigate "a suspected drunk driver." When the officers arrived at the 7-11, the car was unoccupied, and one man was shopping inside the store. A store employee identified the shopper as the man who had been slumped over the steering wheel. The man, who identified himself as McBroom, admitted he was the driver of the Camaro. Turnage observed that McBroom "showed multiple signs of being intoxicated." Standing alone, evidence that McBroom may have appeared to be intoxicated was not enough to provide the basis for a pat-down search. *See Ramirez v. City of Buena Park*, 560 F.3d 1012, 1022 (9th Cir. 2009) (citing, *inter alia*, *United States v. Mattarolo*, 209 F.3d 1153, 1158 (9th Cir. 2000)). However, according to Turnage's version of the events, McBroom repeatedly returned his hands to his pockets after being asked to remove them. He became increasingly more uncooperative while Turnage spoke with him, eventually walking around the end of a store aisle as he again placed his hands in his pockets. Turnage was unable to see what McBroom was doing at that point. Under Turnage's version of the facts, Turnage reasonably could have suspected that McBroom might have a weapon. *Id.; see United States v. Flatter*, 456 F.3d 1154, 1158 (9th Cir. 2006) ("[S]udden movements by defendants, or repeated attempts to reach for an object that was not immediately visible, [are] actions that can give rise to a reasonable suspicion that a defendant is armed"; citing cases).

In addition, McBroom has offered no evidence to support summary judgment on his claim that the city was negligent. Simply stated, McBroom has failed to show the absence of material facts regarding any of his claims.

11 - FINDINGS & RECOMMENDATION

***CONCLUSION***

For the reasons discussed above, the undersigned recommends McBroom's motion for summary judgment be granted as to Turnage's qualified immunity defense, and denied in all other respects.

***SCHEDULING ORDER***

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due by **September 3, 2013.** If no objections are filed, then the Findings and Recommendations will go under advisement on that date. If objections are filed, then any response is due by **September 20, 2013.** By the earlier of the response due date or the date a response is filed, the Findings and Recommendations will go under advisement.

IT IS SO ORDERED.

Dated this <u>15th</u> day of August, 2013.

/s/ Dennis J. Hubel

Dennis James Hubel
Unites States Magistrate Judge

12 - FINDINGS & RECOMMENDATION